FILED
00 MAR 31 PM 5:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KAREN POWELL, | } |
| Plaintiff, | } |
| v. | } CASE NO. CV-97-B-0396-S |
| SOUTHERN RESEARCH INSTITUTE, | } |
| Defendant. | } |

ENTERED
APR - 3 2000

## MEMORANDUM OPINION

This case is before the court on the motion of defendant Southern Research Institute ("SRI" or "defendant") for summary judgment. Plaintiff Karen Powell ("Powell" or "plaintiff") was employed by SRI from 1991 to 1994. Powell alleges violations of race and gender discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq* ("Title VII") and 42 U.S.C. § 1981 ("Section 1981" or "§ 1981"). Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that the defendant's motion for summary judgment is due to be granted.

### I. FACTUAL SUMMARY

Defendant SRI hired plaintiff on March 18, 1991, as a Toxicology Technician Trainee. (Kerr Aff. ¶ 6, Attach. A.) SRI eventually promoted Powell to the position of Toxicology Technician I, which she held until SRI laid her off on December 2, 1994. (Kerr Aff. ¶¶ 6, 12, Attachs. A, H; PX 3 at 70-71.) Powell's duties included dosing and caring for laboratory animals, cleaning the laboratory, and maintaining daily laboratory records. (PX 3 at 68-69.)

19

On January 1, 1994, SRI appointed John Firneno as Manager of Toxicology Services Group. (Firneno Aff. ¶ 1; Firneno Dep. at 53.) Firneno's supervisor, David Serota ("Serota"), a white male, was appointed Director of Toxicology Research Department in July 1993. (Serota Aff. ¶ 1.) Serota reported directly to David Prejean ("Prejean"), who was vice-president of Life Sciences Division. (Prejean Aff. ¶¶ 1, 2.) James G. Kerr ("Kerr") was Manager of Human Resources during the relevant period of time. (Kerr. Aff. ¶ 1.)

In the fall of 1994, SRI was experiencing financial difficulties. (Firneno Dep. at 92; Kerr Aff. ¶ 7, Attach. C.) In November 1994, Prejean directed Serota to reduce his department's monthly salaries by $15,000. (Prejean Aff. ¶ 8.) To meet Prejean's requirements, Serota met with Firneno to select candidates for layoffs. (Firneno Dep. at 91-92; Serota Aff. ¶ 9.)

On November 16, 1994, Serota wrote a memorandum to Prejean proposing the cuts for his department; his choices included Powell and Eddie Hildreth ("Hildreth"). (Serota Aff. ¶ 9, 11, Attach. A.) Hildreth, a white male with cerebral palsy,[1] was an Equipment Technician. (*Id.*; Kerr Dep. at 138-139.) The memorandum expressed Serota's desire to "furlough" Hildreth with the "hope" of "bringing back" Hildreth to SRI. (Serota Aff. ¶ 9, 11, Attach. A.) The only comment next to Powell's name was her position. (*Id.*) Upon notification of the layoff, Hildreth expressed an interest in coming back to work at SRI. (Kerr Dep. at 121.) Powell expressed no such interest. (*Id.*)

---

[1] Defendant submitted the affidavit of Dr. Harold E. Simon, M.D. stating that Hildreth suffers from the disability of cerebral palsy. The court makes no judgment as to whether Hildreth is "disabled" for purposes of the ADA. That issue is not before the court.

2

On December 2, 1994, Powell was laid off from SRI. (Kerr Aff. ¶ 12, Attach. H.) On December 14, 1994, Powell filed her first charge of discrimination ("EEOC Charge") with the Equal Employment Opportunity Commission ("EEOC"). (PX 9.) In its response, SRI noted that a white male, Hildreth, had also been laid off. (Kerr Aff. ¶ 6, Attach. A.)

By February 1995, SRI's financial situation had improved. (Firneno Aff. ¶ 8; Kerr Aff. ¶¶ 7, 14, Attach. C.) On February 23, 1995, Firneno interviewed Austin Anderson, a white male, for a Toxicology Technician position. (Firneno Aff. ¶ 8; Kerr Aff. ¶ 14, Attach. L.) Anderson had no experience working in a toxicology lab and had no certifications in laboratory procedures. (PX 2 89-91; PX 1 at 41, 58.)

On March 6, 1995, the EEOC mailed Powell's EEOC Charge to SRI, addressed to Human Resources Manager James Kerr; Kerr was out of the office on jury duty. (Kerr Aff ¶ 10.) Although Firneno did not offer Anderson the job immediately, by March 8, 1995, Firneno decided to hire Anderson for the position of Toxicology Technician II. (Firneno Aff. ¶ 8.) On March 13, 1996, Kerr finally returned to the office and opened the EEOC Charge. (Kerr. Aff ¶ 10; Firneno Aff. ¶ 8.) On March 14, 1995, Kerr first mentioned the EEOC Charge to Firneno. (Kerr Aff. ¶ 10.) On March 14, 1995, Firneno actually offered Anderson the Toxicology Technician II position. (Kerr Aff. ¶ 14(b), Attach. M.) Over the next two years, SRI filled numerous other Toxicology Technician positions, including one by a black female. (Bailey Dep. at 97-110.)

Due to its improved financial status, in April 1995, SRI went ahead with its plans to recall Eddie Hildreth as an Equipment Technician. (PX 4 at 127, 139.) SRI contacted Hildreth's parents to notify him about the opening. (Kerr Dep. at 138-39.) Upon notification, Hildreth

applied for and received the position. (*Id.*) Powell did not apply for the Equipment Technician position. (Pl.'s Dep. at 55.)

Powell received her right-to-sue notice from the EEOC on July 29, 1995, and filed her first complaint with the court on October 26, 1995. In that complaint, Powell alleged that she was subjected to sexual harassment and that her termination was based on her race and gender and was in retaliation for having opposed sexual harassment.

Powell filed her second EEOC charge on June 28, 1996, and her second complaint in March of 1997. In the second complaint, plaintiff alleged race and gender discrimination based on failure to recall and/or hire, and retaliation based on the same actions. On May 21, 1997, the court ordered the two cases consolidated. On September 29, 1997, the court granted summary judgment for the defendant on all claims set forth in the first complaint. This opinion discusses the remaining claims – race and gender discrimination based on failure to recall and/or hire, and retaliation based on the same actions.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. A dispute is genuine "if the

4

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgement, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

A.  **Title VII and 42 U.S.C. §1981 Race and Gender Discrimination Based On Failure to Hire or Recall[2]**

Claims of discrimination under Title VII and 42 U.S.C. § 1981 are governed by the familiar, tripartite framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).[3] Under this framework, plaintiff bears the initial burden of establishing a

---

[2]In plaintiff's amended complaint, she alleges gender discrimination under 42 U.S.C. §1981. (Pl.'s Am. Compl. ¶ 13.) Section 1981 prohibits race, not gender, discrimination. *Runyon v. McCrary*, 427 U.S. 160, 173-75 (1976); *Johnson v. Railway Express Agency*, 421 U.S. 454, 459-60 (1976). Therefore, defendant's motion for summary judgment on plaintiff's claim of gender discrimination under 42 U.S.C. §1981 is due to be granted.

[3]Although the statutory language and remedies of 42 U.S.C. § 1981 are distinct from Title VII, the allocation of the burdens of proof and the analysis for determining whether a defendant employer unlawfully discriminated against an employee are the same. *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994).

5

prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53. If plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802.

If the defendant succeeds in carrying this burden, then plaintiff must prove that the defendant's articulated reasons are a mere pretext for unlawful motives (i.e., race discrimination or retaliation). *Burdine*, 450 U.S. at 253. A plaintiff's prima facie case coupled with sufficient evidence to allow a fact finder to disbelieve the employer's proffered explanation for its actions is enough to preclude entry of judgment as a matter of law. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997); *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997). At all times, plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). In order to establish a prima facie case of discrimination for failure to hire, plaintiff must prove (1) that plaintiff is a member of a protected class; (2) that plaintiff applied and was qualified for the position at issue; (3) that, despite his or her qualifications, the plaintiff was rejected for the position; and (4) that after this rejection the position remained open or was filled by a person not

within the protected class.[4] *Coutu v. Martin County Bd. of County Comm'n*, 47 F.3d 1068, 1073 (11th Cir. 1995); *Welborn v. Reynolds Metals Co.*, 810 F.2d 1026, 1028 (11th Cir. 1987).

### 1. *The Toxicology Technician Position*

Plaintiff alleges that about three months after her layoff, SRI discriminated against her by hiring a less qualified white male, Austin Anderson, to fill a Toxicology Technician II position. (Pl.'s Am. Compl. ¶ 11.) Plaintiff further avers that she was discriminated against because SRI did not notify her about the availability of this and other open positions and then hired Austin Anderson and other applicants. (*Id.* at ¶¶ 11, 13.)

Plaintiff concedes that the position filled by Anderson was advertised, that she did not look in the newspaper for such jobs, and that she did not apply.[5] (Pl.'s Dep. at 26, 28, 35; Pl.'s Br. Opp. Def.'s Mot. Summ. J. ("Pl.'s Opp.") at 15.) Moreover, undisputed evidence in the record shows that other Toxicology Technician openings were advertised in newspapers and at colleges. (PX 1, Ex. 22; PX 7, Exs. N, V (Employment Applications of Toxicology Technicians showing that they found out about the availability of positions through "College Contact" or "Advertisement").)

The dispositive issue in this case is plaintiff's failure to establish the second element of the prima facie case. The defendant contends that the plaintiff did not apply for the Toxicology Technician position. (Def.'s Brief in Supp. of Mot. Summ. J. ("Def.'s Brief") at 9.) In response,

---

[4]The legal elements of a §1981 and Title VII claim are identical. *See Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985).

[5]Powell applied for her original job at SRI due to an advertisement in the newspaper. (Pl.'s Dep. at 27).

7

the plaintiff admits that she did not send any applications to SRI following her layoff. (Pl.'s Dep. at 26, 35; *see* Pl.'s Opp. at 13-17.) Thus, since plaintiff cannot show the court that she applied for the positions, a required element of the prima facie case, defendant's motion for summary judgment is due to be granted as to the Title VII race and gender discrimination claims and the §1981 race discrimination claim. *Williams v. Carrier Corp.*, 889 F. Supp 1528, 1530 (M.D. Ga. 1995).

Plaintiff sets forth several reasons why her lack of application for or expressed interest in the open Toxicology Technician positions does not mandate a grant of summary judgment. Specifically, she claims that (1) Hildreth and others were contacted through informal means; (2) she showed interest in a position by filing her EEOC Charge; and (3) application would have been futile. The court will address these arguments in turn.

   *a.* *Other hirees were contacted through informal means*

Plaintiff correctly notes that two other hirees, Hildreth and Sheryl Brown, a human resources employee, were contacted through informal means. In *Carmichael v. Birmingham Saw Works,* the Eleventh Circuit stated:

> By showing that he applied, the plaintiff shows that the employer knew he was interested in the job. But *when there is no formal notice of the job's availability*, the plaintiff may have no means, within his own knowledge, of showing whether the employer considered him or not. Furthermore, when an employer uses such informal methods it has a duty to consider *all those who might reasonably be interested*, as well as those who have learned of the job opening and expressed interest.
>
> Accordingly, a plaintiff makes out a prima facie case . . . as long as he establishes that the company had some reason or duty to consider him for the post.

8

*Carmichael*, 738 F.2d 1126, 1133 (11th Cir. 1984) (emphasis added).

In other words, the affirmative duty on an employer to consider non-applicants for a job opening, only arises when the employer has provided "no formal notice of the job's availability." *Id.* Further, once such a duty arises, the employer must consider "all those who might *reasonably* be interested." *Id.* (emphasis added). Based on this precedent, the court is of the opinion that SRI had no duty to contact plaintiff regarding the Toxicology Technician position. The court predicates its decision on two reasons.

First, in this case, there was ample "formal notice of the job's availability." *Carmichael*, 738 F. 2d at 1133. It is undisputed that the Toxicology Technician position awarded to Anderson was advertised. Moreover SRI used formal notice to solicit applications from other Toxicology Technician hirees. (PX 1, Ex. 22; PX 7, Exs. N, V (Employment Applications of Toxicology Technicians showing that they found out about the availability of positions through "College Contact" or "Advertisement").) This was not the type of informal, secretive process condemned by the Eleventh Circuit in other cases. *See, e.g, Roberts v. Gadsden Memorial Hospital*, 835 F. 2d 793, 798, *amended on other grounds*, 850 F. 2d 1549 (11th Cir. 1988). Consequently, because SRI gave formal notice of Toxicology Technician job openings, it had no duty to consider or contact the plaintiff.

Second, SRI's use of informal methods in other job openings is irrelevant. A duty might arise for SRI to consider the plaintiff if informal methods were used for a job opening in which she "might be reasonably interested." *Carmichael*, 738 F. 2d 1133. SRI could only assume that plaintiff would be reasonably interested in a Toxicology Technician position, not other job openings. Plaintiff, however, alleges that SRI used informal methods to fill Equipment

9

Technician and human resource positions. SRI would have no duty to consider plaintiff for such openings because it had no actual or constructive knowledge of plaintiff's reasonable interest in such positions. Therefore, because plaintiff had no reasonable interest in positions other than Toxicology Technician, the use of informal methods in hiring for other positions is irrelevant.[6]

  b. *Plaintiff showed interest by filing an EEOC charge*

Plaintiff relies on the Seventh Circuit case of *Smith v. BMI*, 957 F.2d 462 (7th Cir. 1992), for the proposition that SRI should have known of her interest in future employment through the filing of her first EEOC Charge. In *Smith*, the plaintiff filed a complaint with the employer's Human Resources Committee in which he stated that he wished to return to work for BMI. *Smith*, 957 F.2d at 463-464. Morever, he repeated this desire at a fact-finding conference and to other employees, including supervisors' secretaries. *Id.* at 464.

In this case, there is no evidence that plaintiff ever expressed an interest in returning to SRI. (Pl.'s Dep. at 26, 31-35, 55.) Thus, SRI had no reason to know of her interest and no duty to consider her for the Toxicology Technician positions. Consequently, the court is of the opinion that *Smith*'s reasoning and holding are inapposite to this case.

  c. *Application would have been futile*

Plaintiff contends that because SRI filled numerous Toxicology Technician positions after plaintiff's layoff without calling the plaintiff, any application would have been futile. Such

---

[6]The court could find no evidence in the record explaining why SRI chose to give formal notice of some positions and not others. However, under *Carmichael*, the court need only determine whether formal notice was given. If so, plaintiff had the same opportunity to apply as other potential applicants. Once formal notice is provided, *Carmichael* and its progeny impose no duty on an employer to give non-applicants special consideration.

10

speculation is insufficient to raise a genuine issue of material fact, and the court finds this argument without merit.

### *d.*     *Conclusion*

The plaintiff has not put forth law or evidence mitigating her failure to apply for the Toxicology Technician position. Consequently, defendant has met its burden of showing that no genuine issue of material fact exists as to plaintiff's failure to apply for the position. Because the plaintiff has not established a prima facie case of discrimination in hiring and/or recall as to the Toxicology Technician position, the court is of the opinion that judgment is due to be granted in favor of the defendant.

### 2.     *The Equipment Technician Position*

Plaintiff avers that SRI discriminated against her by recalling a less-qualified white male, Eddie Hildreth, to his previously-held Equipment Technician position. (Pl.'s Am. Compl. ¶ 10.) Plaintiff testified that she also should have been notified about the position. (Pl.'s Dep. at 61.)

### *a.*     *Prima Facie case*

As with the Toxicology Technician position, the court finds that plaintiff's failure to exhibit any interest in the position is fatal to her prima facie case. As noted, she never expressed an interest to SRI regarding being rehired, nor did she send an application for employment. (Pl.'s Dep. at 26, 31-35, 55; PX 4 at 121; PX 2 at 81.)

Plaintiff relies on the same arguments she used in relation to the Toxicology Technician position to contend that her failure to apply should be excused. As discussed above, the court rejects these arguments because (1) SRI did not have a duty to contact plaintiff for a job opening in which she did not have a reasonable interest; (2) plaintiff's first EEOC Charge did not give

11

SRI notice of such interest; and (3) plaintiff's claims of futility are speculative, at best. Because the plaintiff has not established a prima facie case of discrimination in hiring and/or recall as to the Equipment Technician position, the court is of the opinion that summary judgment is due to be granted.

### b.  *Legitimate, Nondiscriminatory Reasons*

Even if plaintiff were able to establish a prima facie case with respect to the Equipment Technician position, defendant has produced legitimate, nondiscriminatory reasons for recalling Hildreth to the position. The defendant states that Hildreth was recalled for rehire because (1) when informed of the layoff, he expressed an interest in returning, (2) he had previously held the position, and (3) he was disabled. (Def.'s Brief at 12; Serota Aff. at ¶¶ 9, 11; PX 4 at 121, 138-139; Aff. of Harold E. Simon, M.D. ¶ 3.)[7]

### c.  *Pretext*

Plaintiff contends that the defendant's proffered reasons for recalling Hildreth to the Equipment Technician position were pretext for unlawful discrimination based on plaintiff's race and gender. Once an employer produces legitimate, nondiscriminatory reasons, the plaintiff's ensuing "burden of proving [that the employer's proffered explanation is pretextual] merges with the plaintiff's ultimate burden of proving that [race or gender] was a determining factor in [the challenged decision], and it can be met by showing that a discriminating reason more likely than not motivated the employer's decision, or by discrediting the employer's proffered explanation."

---

[7]Defendant also argues that plaintiff's failure to apply was a legitimate, nondiscriminatory reason. This is a redundant argument because ultimately, at the pretext stage, the analysis would collapse into an inquiry of the reasons SRI did not require Hildreth to apply.

*Clark v. Coats & Clark, Inc.*, 990 F. 2d 1217, 1228 11th Cir. 1993). Under the latter approach, plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nondiscriminatory reasons for its action that a reasonable factfinder could find [all of those reasons] unworthy of credence." *Combs v. Plantations Patterns*, 106 F. 3d 1519, 1538 (11th Cir. 1997).

Plaintiff contends that "[t]he fact that the defendant used Hildreth as a comparator in its first position statement [responding to plaintiff's first EEOC Charge], yet had made the decision to rehire him at least by April 5, 1995 and probably earlier according to Serota's memo, is additional evidence of pretext and discriminatory animus." (Pl.'s Opp. at 20.) In other words, plaintiff contends that SRI's recall of a white male comparator is sufficient evidence of pretext. This argument is without merit.

Defendant has set forth legitimate, nondiscriminatory reasons for the recall. Specifically, Hildreth (1) expressed an interest in returning to SRI, (2) had previously held the position, and (3) had a perceived disability that caused defendant to notify Hildreth that he was eligible for rehire.[8] Plaintiff has not set forth sufficient evidence for a reasonable fact finder to conclude that SRI's legitimate, nondiscriminatory reason was pretext for unlawful discrimination based on race or gender. Consequently, the court is of the opinion that even if plaintiff could establish a prima facie case, summary judgment is due to be granted on all discrimination claims relating to the Equipment Technician position.

---

[8]Once again, the court notes that there is no evidence in the record as to why formal notice was given on some positions and not others. Under *Carmichael*, however, even if notice was not given for this position, there was no duty to recall an employee to a position in which she was not reasonably interested.

### 3. Other Comparators

Defendant argues that because plaintiff testified at her deposition that she was complaining only about Hildreth and Anderson, the court should disregard evidence regarding any comparators other than these. The court agrees with the proposition that the complaint governs the scope of the claim, not plaintiff's personal knowledge. However, in this case, given the state of discovery, plaintiff cannot extend her failure to hire claim to positions other than those filled by Anderson and Hildreth. The court first notes Powell's deposition testimony:

> Q. All right. Now, let's move on to the next line on that charge. And SRI has hired less qualified white males to fill the position of toxicology tech since I filed my original EEOC charge. Who is the person that you say was the less qualified white male that was hired for that position?
>
> A. Austin Anderson.
>
> Q. Anybody else?
>
> A. No.

(Pl.'s Dep. at 59-60.)

> Q. All. Right. Now, on the recall, the less qualified white male that you say was recalled, who was that?
>
> A. Eddie Hildreth.
>
> Q. Is there anybody else that you say was recalled other than Eddie Hildreth that was less qualified for a position than you?
>
> A. No.

(Pl.'s Dep. at 55.)

> Q. I just want to be sure that you're complaining about Mr. Anderson and Mr. Hildreth.
>
> A. Yes.

14

>   Q.    Anyone else?
>
>   A.    No.

(Pl.'s Dep. at 70.)

Moreover, the personnel files of three of the purported new comparators were produced in Powell's first action, and based on this production Powell could reasonably assume that defendant was continuing to hire. The personnel files of the new comparators were available to Powell and to her counsel before she filed her second EEOC Charge and certainly before she gave her second deposition and limited her comparators to Hildreth and Anderson. For this reason, the court is of the opinion that plaintiff's claims cannot be expanded to include comparators other than Anderson and Hildreth.

**B.    Title VII and 42 U.S.C. §1981 Retaliation**

Plaintiff alleges that SRI retaliated against her "for her filing an EEOC charge of discrimination opposing employment practices and other opposing discrimination that the plaintiff believed to be in violation of Title VII and 42 U.S.C. §1981." (Pl.'s Am. Compl. ¶ 17.) To establish a prima facie case of retaliation a plaintiff must show: (1) that she engaged in statutorily protected expression, (2) that she experienced an adverse employment action, and (3) a causal link between the protected expression and the adverse action. *Goldsmith v. City of Atmore*, 996 F. 2d 1155, 1163 (11th Cir. 1993).[9]

---

[9] Defendants claim there is no cause of action for retaliation under § 1981. The Eleventh Circuit has held that when a plaintiff's claim is based upon race and retaliation due to filing a race-based claim with the EEOC, it is cognizable under § 1981. *Andrews v. Lakeshore*, 140 F.3d 1405, 1412-13 (11th Cir. 1998). The legal elements of a §1981 and Title VII claim are identical. *See Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985).

15

Defendant contends that because there is no causal link between the protected conduct and the alleged adverse employment action, plaintiff has failed to prove all of the required elements of her prima facie case. The court agrees that the plaintiff does not meet all the elements of the prima facie case, but for different reasons.

Although the filing of the first EEOC Charge is protected conduct, there is no adverse employment decision. As discussed in the discrimination analysis above, plaintiff never applied for the positions at issue. SRI, therefore, never considered her for the positions. Consequently, the second element of her prima facie case is missing.

In the alternative, even if there was an adverse employment decision, the court accepts defendant's argument regarding causation. As to the Equipment Technician position, the decision to recall Hildreth, as plaintiff admits, was made prior to the filing of the EEOC Charge. (Serota Aff. at ¶ 9, 11, Attach. A; PX 4 at 138-39.) Consequently, plaintiff has failed to establish a prima facie case of retaliation in hiring as to the Equipment Technician position.

As to the Toxicology Technician position, Firneno and Kerr acknowledged in their depositions that the actual offer to Anderson was made after they became aware of the EEOC charge filed by plaintiff. (PX 2 at 84; PX 4 at 159.) However, both stated in affidavits that the actual decision to hire Anderson was made before either was aware that she had filed an EEOC charge. (Kerr. Aff. ¶ 10; Firneno Aff. ¶ 8.) Consequently, plaintiff has failed to establish a prima facie case of retaliation in hiring as to the Toxicology Technician filled by Anderson.

The record reveals, however, a number of Toxicology Technician positions filled after Anderson was hired and thus after Kerr and Firneno were aware of the EEOC Charge. (PX 1 at 97-110.) As stated above, the court is of the opinion that plaintiff cannot challenge these hires.

16

However, even if the court considered these new hires, plaintiff has failed to establish a prima facie case of retaliation. Because of plaintiff's failure to apply, there is no adverse employment action following plaintiff's protected conduct. Consequently, the court is of the opinion that defendant has not established a prima facie case of retaliation, and her motion for summary judgment with regard to all retaliation claims is due to be granted.

## IV. CONCLUSION

Based on the foregoing, the court concludes that defendant's motion for summary judgment is due to be granted. An Order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 31st day of March, 2000.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge